Filed 7/25/19

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KAYVON PATTON,<br><br>    Defendant and Appellant. | D074344<br><br><br>(Super. Ct. No. SCD275677) |

APPEAL from a judgment of the Superior Court of San Diego County,

Polly H. Shamoon, Judge.  Affirmed.

Leslie A. Rose, under appointment by the Court of Appeal, for Defendant and

Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A.

Gutierrez, and Yvette M. Martinez, Deputy Attorneys General, for Plaintiff and

Respondent.

Defendant Kayvon Patton pleaded guilty to grand theft of personal property (Pen. Code, § 487, subd. (a))[1] and was sentenced to three years of formal probation. Among the conditions of probation was a condition subjecting his electronic devices to warrantless search. Patton challenges this condition as unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and unconstitutionally overbroad.

At the outset, we reject the People's contention that Patton's appeal should be dismissed because he failed to obtain a certificate of probable cause. (See § 1237.5.) The People maintain a certificate is necessary because Patton (1) knew at the time of his plea that some reasonable conditions of probation would be imposed, and (2) waived his appellate rights as part of the plea agreement, including the ability to challenge a condition that was unknown at the time of the plea. As we explain, notice that some unspecified probation conditions will likely be imposed at a future date does not mean that a postsentence challenge to a particular condition is an attack on the validity of the plea. More fundamentally, the language of Patton's plea agreement cannot be reasonably construed to waive his right to appeal a probation condition that was not specifically addressed in that agreement. As a result, Patton's contentions in this appeal are based on "[g]rounds that arose after entry of the plea and do not affect the plea's validity," thus obviating the need for a certificate. (Cal. Rules of Court, rule 8.304(b)(4).)[2]

---

[1] Future statutory references are to the Penal Code unless otherwise indicated.

[2] All subsequent rule references are to the California Rules of Court.

2

Considering the merits of Patton's appeal, however, we conclude that the electronic device search condition was properly imposed. Patton pleaded guilty to stealing electronic devices—cell phones and other items—so that he could buy drugs. There is a direct and manifestly reasonable relationship between the electronic device search condition and both the crime of which Patton was convicted as well as the underlying reasons for his criminal behavior such that the condition will assist in preventing future criminality. And while searches of electronic devices surely implicate privacy interests, a condition of probation permitting examination of such devices without a warrant is not unconstitutionally overbroad on its face. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 2018 around 4:30 p.m., officers with the San Diego Police Department responded to a reported theft at Hit Mobile Store. Store employee Miguel O. stated that he had been helping a female customer at the front counter when two men entered the store, followed by two more men. At some point he heard a loud crack and saw the four men pulling electronic devices off security cords attached to the wall. They ran out of the store with three iPhones, two Apple Watches, an iPad Pro, a Samsung S7, and Samsung gear VR.

When officers arrived, they discovered a smudged fingerprint on a Samsung phone that was dropped by one of the men on his way out of the store.[3]  A lab report identified the fingerprint as belonging to defendant Kayvon Patton.  Video from the store's surveillance camera confirmed Patton as one of the four men.

The San Diego County District Attorney charged Patton with felony grand theft of personal property (§ 487, subd. (a)).  Patton pleaded guilty as part of a plea agreement whereby he would receive formal probation and pay restitution of $4,620.  As part of the plea deal he agreed to "give up my right to appeal . . . any sentence stipulated herein."  Another part of the form agreement stated, "As conditions of probation I may be given up to a year in jail custody, plus the fine, and any other conditions deemed reasonable by the Court."

In a subsequent conversation with a probation officer prior to sentencing, Patton stated he sold one of the stolen phones to a pawn shop for $550 and used the money to purchase "Norcos".  Patton has a history of substance abuse; he began to drink alcohol at age 13, smoke marijuana at age 15, and take Norco pills at age 15.  Up until his arrest, Patton took Norco pills daily.

At the sentencing hearing in July 2018, the judge imposed three years of formal probation under various conditions with a stay of 240 days in local custody pending successful completion of probation.  The probation conditions included limitations on

---

[3]     The record indicates the fingerprint may have actually been found on the front door of the store instead.  The exact location of the fingerprint is not relevant.

drug and alcohol possession and an order to stay away from the other unidentified perpetrators. Another condition required that Patton "submit person, vehicle, residence, property, personal effects, *computers, and recordable media including electronic devices* to search at any time with or without a warrant, and with or without reasonable cause, when required by [a probation officer] or law enforcement officer." (Italics added.) Patton's appeal challenges this condition. He did not request a certificate of probable cause.

DISCUSSION

A. *Failure to Obtain a Certificate of Probable Cause*

The People contend we should not reach the merits of Patton's appeal because he did not obtain a certificate of probable cause under section 1237.5 after entering his guilty plea. That section generally prohibits appeals following pleas of guilty or no contest unless the defendant first obtains a certificate from the trial court attesting that there are reasonable grounds for the appeal. There are two exceptions to this general rule, as provided in Rule 8.304(b)(4): A certificate is not required if the appeal is based on either "[t]he denial of a motion to suppress evidence under Penal Code section 1538.5" or "[g]rounds that arose after entry of the plea and do not affect the plea's validity." The People contend a certificate was required because the second exception (the only one pertinent here) was not satisfied.

The People do not dispute that the specific grounds for Patton's appeal—a condition of probation imposed at sentencing two months after his plea—"arose after entry of the plea" within the meaning of Rule 8.304. They suggest, however, that

5

because the plea agreement contemplated a grant of probation with "reasonable" conditions, Patton is attempting to challenge something he knew about, at least in a general sense, at the time of the plea. More forcefully, they rely on *People v. Espinoza* (2018) 22 Cal.App.5th 794 (*Espinoza*) to argue that by waiving his right to appeal the "sentence stipulated herein," Patton's challenge to the probation condition necessarily "affect[s] the validity of the plea" because he is seeking to narrow the scope of his appellate waiver.

The People's first argument need not detain us long. The mere fact that Patton knew some unspecified "reasonable" restrictions or requirements could be imposed as a condition of his probation does not mean he was agreeing to accept *anything* the court decided to include, regardless of how unreasonable he thought it was. The People's reliance on *People v. Panizzon* (1996) 13 Cal.4th 68 (*Panizzon*) is misplaced. In that case, the defendant challenged the specific sentence to which he had agreed as part of his plea agreement, "as opposed to a matter left open or unaddressed by the deal." (*Id.* at p. 86.) Here, unlike in *Panizzon*, Patton is challenging the imposition of an allegedly *unreasonable* probation condition that he had no knowledge of at the time he entered into the agreement.

The boilerplate appellate waiver included on the plea form likewise does not preclude Patton's appeal. As this court has previously observed, "[a] defendant may waive the right to appeal as part of a plea bargain where the waiver is knowing, intelligent and voluntary. [Citation.] A broad or general waiver of appeal rights ordinarily includes error occurring before but not after the waiver because the defendant

6

could not knowingly and intelligently waive the right to appeal any unforeseen or unknown future error. [Citation.] Thus, a waiver of appeal rights does not apply to ' "possible future error" [that] is outside the defendant's contemplation and knowledge at the time the waiver is made.' " (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815 (*Mumm*), quoting *Panizzon*, *supra*, 13 Cal.4th at p. 85; accord, *People v. Vargas* (1993) 13 Cal.App.4th 1653, 1662–1663 (*Vargas*) [general waiver of appeal rights does not constitute "a specific waiver of future sentencing error"]; *People v. Sherrick* (1993) 19 Cal.App.4th 657, 659 [general waiver of right to " 'appeal any ruling in this case' " does not preclude argument that sentencing court decided his eligibility for probation " 'on a patently erroneous standard' "]; *In re Uriah R.* (1999) 70 Cal.App.4th 1152, 1160 [a general waiver does not preclude attacks on subsequent errors that are unforeseen or unforeseeable at the time the waiver was made]; *People v. Kennedy* (2012) 209 Cal.App.4th 385, 391 [under *Panizzon*, "waiver will not be construed to bar the appeal of sentencing errors occurring subsequent to plea especially when the defendant is attempting to appeal sentencing issues left unresolved by the particular plea agreement"].)

In *Espinoza*, *supra*, 22 Cal.App.5th 794, the appellate court relied on Justice Baxter's unusual concurring opinion to his own majority opinion in *People v. Buttram* (2003) 30 Cal.4th 773 (*Buttram*). The holding of *Buttram* is unremarkable and fully consistent with prior case law. The defendant pleaded guilty in exchange for an agreed maximum sentence, or "lid." (*Id.* at p. 776.) There was nothing in the plea agreement affirmatively waiving his right to appeal any sentencing issue that arose after the plea.

7

(*Id.* at p. 778.) Nonetheless, the People argued that a certificate of probable cause was required because "when a defendant negotiates a maximum sentence in return for his plea," any appellate challenge to a sentence imposed within the maximum "is an attack on the validity of the plea itself, and thus requires a certificate of probable cause." (*Id.* at p. 780.) Rejecting this argument, the Supreme Court held that "absent contrary provisions in the plea agreement itself," no certificate of probable cause was required for defendant to appeal the trial court's discretionary decision to impose the maximum allowable sentence rather than some lesser punishment. (*Id.* at p. 790.)

Noting that the plea agreement in *Buttram* did not address defendant's ability to attack a sentence within the allowable sentencing range, Justice Marvin R. Baxter's concurring opinion urged parties in future cases to expressly negotiate that issue (30 Cal.4th at p. 791 (conc. opn. of Baxter, J.)), inferentially advocating that criminal defendants be encouraged to waive their appellate rights if the trial court imposed a sentence within the agreed-upon range. He suggested that with such an express waiver, "an attempt to appeal the sentence notwithstanding the waiver would necessarily be an attack on an express term, and thus on the *validity*, of the plea," requiring a certificate of probable cause. (*Id.* at p. 793 (conc. opn. of Baxter, J.).)

*Espinoza* sought to apply Justice Baxter's recommendations to a defendant's post-plea appeal challenging a condition of probation. In *Espinoza*, the defendant "broadly waived her 'right to appeal the judgment and any rulings of the court.' " (22 Cal.App.5th at p. 801.) The court found this "broad[]" waiver sufficient to invoke Justice Baxter's

8

concurring comments and preclude defendant's appeal in the absence of a certificate of probable cause.[4] (*Id.* at p. 803.)

Whatever the merits of *Espinoza*'s analysis, its premise depends on the defendant's *express waiver* of the right to appeal a discretionary decision on probation conditions that is made *after* entry of the plea. As a result, the first issue we must address is the scope of the appellate waiver in this case. (See *Vargas*, *supra*, 13 Cal.App.4th at p. 1661; *People v. Becerra* (2019) 32 Cal.App.5th 178, 188 (*Becerra*).) Here, the provision in the plea agreement purporting to waive Patton's appellate rights is decidedly different—and significantly narrower—than the comparable provision in *Espinoza*.

In *Espinoza*, the plea form advised the defendant that she had "the right to appeal the judgment and rulings of the court." (22 Cal.App.5th at p. 797.) She checked a box on the form indicating that she agreed to "give up [her] right of appeal." (*Ibid.*) In contrast, Patton initialed a box on the plea form in this case that stated, "I give up my right to appeal the following: (1) denial of my 1538.5 motion, (2) issues related to strike priors (under [§§] 667(b)–(i) and 1170.12), and (3) *any sentence stipulated herein*." (Italics added.) At an earlier point on the form the parties indicated that in exchange for his plea,

---

4       There is, of course, a difference between the express waiver of a defendant's right to appeal a known stipulated sentence (*Panizzon*, *supra*, 13 Cal.4th at pp. 73–74), the waiver of the right to appeal a sentence where at least the maximum punishment is known (*Buttram*, *supra*, 30 Cal.4th at pp. 777, 792), and a situation where the defendant generally waives her right to appeal the judgment but does not know which particular conditions of probation the court is considering (*Espinoza*, *supra*, 22 Cal.App.5th at p. 798 [defendant only told she would be subject to " 'other terms and conditions to make sure [she was] successful on probation' "]).

Patton was promised: "NOLT. Upon successful completion of two years probation and full satisfaction of restitution, no opposition to [section 17, subdivision (b)] reduction to misdemeanor."[5] According to the People, the plea agreement meant that Patton "negotiated a grant of probation, with appropriate terms and conditions."

In waiving his right to appeal "any sentence stipulated *herein*," Patton's plea agreement referred to the terms of the sentence that were included *in the agreement itself*. (Italics added.) We construe that language to apply to the specifics of the stipulated sentence *specified in his plea agreement*. By its terms, the scope of the waiver is limited; it did *not* encompass provisions (such as particular conditions of probation) that were yet to be determined in future proceedings. (*Becerra*, *supra*, 32 Cal.App.5th at p. 188 [no certificate required "[i]f the defendant's claim is not within the scope of an appellate waiver"].) Thus, Patton's appeal in no way attacks the plea or affects its validity, and accordingly no certificate of probable cause was required. (Rule 8.304(b)(4).) We therefore turn to the merits of Patton's appeal.

---

[5] "NOLT" is an acronym meaning that the district attorney will not oppose local time.

B. *Validity of the Electronic Device Search Condition*

      1. *The Condition is Reasonable Under* Lent

Patton challenges the imposition of the electronic device search condition of his probation as unreasonable under *Lent*.[6]  A sentencing court has "broad discretion" to fashion appropriate conditions of probation that facilitate rehabilitation and foster public safety.  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)  Accordingly, we review conditions of probation for an abuse of discretion.  (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).)

Under *Lent*, a probation condition will generally not be held invalid unless it " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ."  [Citation.]' [Citation.]  This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term."  (*Olguin*, *supra*, 45 Cal.4th at p. 379, quoting *Lent*, *supra*, 15 Cal.3d at p. 486.)  The parties agree that the second prong is satisfied, as use of an electronic device is not inherently criminal.  However, we find that neither the first nor the third prong are met.

---

6     We recognize that the question of reasonableness under *Lent* as applied to electronic device search conditions is currently before the Supreme Court in *People v. Trujillo* (2017) 15 Cal.App.5th 574, review granted Nov. 29, 2017, S244650, *In re Ricardo P.* (2015) 241 Cal.App.4th 676, review granted Feb.17, 2016, S230923, and numerous other cases.  Absent the guidance of final decisions from these pending matters, we proceed under the case law available.

11

As part of his plea agreement, Patton pleaded to guilty to grand theft of personal property after he and three unidentified individuals stole multiple electronic devices from an electronics store. There is a clear relationship between theft of electronic devices and the imposition of an electronic device search condition. *In re Malik J.* (2015) 240 Cal.App.4th 896 (*Malik J.*) is instructive on this point. In that case, a minor admitted to stealing an iPhone while on probation. (*Id.* at p. 899–900.) The trial court imposed an additional probation condition requiring that the minor "submit [electronic] devices to search at any time without a warrant by any peace officer." (*Id.* at p. 900.) This condition was valid under *Lent*; the court reasoned that "[o]fficers must be able to determine ownership of any devices in a probationer's custody or within his or her control, and search them if they belong to the probationer or if officers have a good faith belief that he or she is a permissive user." (*Id.* at p. 903.) Like the minor in *Malik J.*, Patton and his confederates stole cell phones, as well as multiple other electronic devices. Because there is a clear relationship between this crime and the electronic device search condition, the first prong of *Lent* is not satisfied.

The electronic device search condition also fails to satisfy the third prong of *Lent*. "A condition of probation that enables a probation officer to supervise his or her charges effectively is . . . 'reasonably related to future criminality.' " (*Olguin*, *supra*, 45Cal.4th at pp. 380–381.) In *Olguin*, the defendant challenged a probation condition requiring him to notify his probation officer of any pets at his residence within 24 hours. (*Id.* at p. 378.) The Supreme Court explained that "[g]enerally speaking, conditions of probation 'are meant to assure that the probation serves as a period of genuine rehabilitation and that the

12

community is not harmed by the probationer's being at large. [Citation.] These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed.' " (*Id.* at p. 380.) In upholding the condition, the court found that knowledge of pets would assist a probation officer in effectively conducting unannounced searches of the probationer's residence and therefore was reasonably related to deterring future criminality. (*Id.* at p. 381.)

In this case, Patton admitted during a probation interview prior to sentencing that he sold one of the stolen phones to purchase drugs. Patton has a history of drug abuse leading up to his arrest for this crime. The electronic device search condition allows a probation officer to effectively monitor Patton and ensure he is not using his phone or other devices to purchase drugs or alcohol in violation of his probation. In this way, Patton is also deterred from committing future theft as a means to obtain drugs again. (See *In re J.E.* (2016) 1 Cal.App.5th 795, 801–803 [electronics search condition reasonable under *Lent* given minor's extensive drug history and need for effective supervision of compliance with conditions of probation to deter future criminal acts], review granted Oct. 12, 2016, S236628.)

Furthermore, as noted by the trial court, Patton committed this crime in cooperation with other individuals. Joint criminal activity requires coordination and communication. To this end, another condition of Patton's probation orders that he stay away from any member of the group involved in the theft. Recognizing that in modern society, coordination and communication usually takes place using electronic devices, allowing a probation officer to monitor Patton's electronic communications serves to

discourage contact with other individuals involved in the theft and joint criminal activity in general. (See *People v. Ebertowski* (2014) 228 Cal.App.4th 1170, 1175 [probation condition requiring defendant to provide social media passwords would help probation officer assess defendant's compliance with unchallenged gang association conditions].)

2. *The Condition is Not Overbroad*

In addition to asserting that the electronic device search condition is unreasonable under *Lent*, Patton challenges the condition as unconstitutionally overbroad. The People argue this claim was forfeited because Patton failed to raise his constitutional objection at sentencing. While not every overbreadth challenge may be raised for the first time on appeal (*In re Sheena K.* (2007) 40 Cal.4th 875, 889), Patton's contention is essentially a facial challenge that may be. (See *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1347 (*Pirali*) ["[D]efendant's position is that the Internet restriction is unduly overbroad and a violation of his First Amendment rights. Such an argument doesn't rely on facts in the sentencing record, and presents a pure question of law."]; *Sheena K.*, at p. 889 [pure questions of law may be first raised on appeal].)[7]

We review "constitutional challenges to probation conditions de novo." (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723 (*Appleton*).) " 'A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally

---

7      To the extent Patton raises arguments in reply amounting to an as-applied challenge and requesting modification of the condition to fit his crime, we do not consider arguments raised for the first time in a reply brief.

overbroad.' [Citation.] 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights–bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' " (*Pirali*, *supra*, 217 Cal.App.4th at p. 1346.)

Patton relies on *Riley v. California* (2014) 573 U.S. 373 (*Riley*) to support his overbreadth claim. In that case the United States Supreme Court found that the search of an individual's cell phone incident to an arrest implicates significant privacy rights due to the vast amount of information these devices contain. (See *id.* at pp. 391–397.) Recognizing these privacy rights, the Court held that in order to search an arrestee's cell phone, as a general rule officers must first obtain a warrant. (*Id.* at p. 403.) But while *Riley* involved cell phone searches of arrestees who had yet to be convicted of any crime, Patton is a probationer sentenced after conviction. "Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." ' " (*United States v. Knights* (2001) 534 U.S. 112, 119.) Indeed, "[j]ust as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." (*Ibid.*) " 'If the defendant finds the conditions of probation more onerous than the sentence he would otherwise face, he may refuse probation.' " (*People v. Moran* (2016) 1 Cal.5th 398, 403.)

Consistent with the Court's observations in *Riley*, *supra*, 573 U.S. 373, we recognize the significant privacy rights implicated by the search of an individual's cell

15

phone.  However, an electronic device search condition allows probation officers to effectively monitor their probationers, ensuring that they comply with the conditions of their probation.  Examining this purpose alongside Patton's diminished expectation of privacy as a probationer, we cannot say that this probation condition is unconstitutionally overbroad on its face.[8]

## DISPOSITION

The judgment is affirmed.

DATO, J.

I CONCUR:

HUFFMAN, Acting P. J.

---

[8]     We need not address whether a more expansive electronic device search condition than the one presented in this case may be unconstitutionally overbroad on its face.  Such a condition may yield different results.  (See *Appleton*, *supra*, 245 Cal.App.4th at p. 721, 727 [probation condition where defendant's electronic devices "subject to forensic analysis search for material prohibited by law" unconstitutionally overbroad].)

Haller, J., Concurring.

I agree with the majority's conclusions that a certificate of probable cause is not required and the challenged probation condition was proper. I write separately to clarify my views on the necessity of obtaining a probable cause certificate before challenging a probation condition as unreasonable. In particular, I agree with the analysis in *People v. Espinoza* (2018) 22 Cal.App.5th 794 (*Espinoza*), but find the decision distinguishable. Although the distinction is subtle, it is critical for appellate counsel to understand this difference when deciding whether to seek a probable cause certificate and in briefing the issue on appeal.[1]

An exception to the probable cause certificate requirement after a guilty plea applies when the appellant raises "[g]rounds that arose after entry of the plea *and* do not affect the plea's validity." (Cal. Rules of Court, rule 8.304(b)(4)(B), italics added.) Challenges that "do not affect the plea's validity" (*ibid.*) are arguments on matters outside the scope of the plea agreement (*People v. Becerra* (2019) 32 Cal.App.5th 178, 188 (*Becerra*)). In determining the scope of the plea agreement, the courts apply a contract analysis and determine the parties' mutual intent by examining the plea agreement language and other objective criteria. (*Becerra*, at pp. 188–189.)

---

[1] In a prior unpublished opinion, counsel and this court did not fully consider the distinction. In that case, there was no prejudice because we reached the issue on its merits and found it was unavailing.

Under these rules, the critical issue on the probable cause certificate requirement is whether the court's ruling fell within the intended scope of the plea agreement, as that intent was objectively manifested by the parties.  (*Becerra*, *supra*, 32 Cal.App.5th at pp. 188–189.)  This is true even if the appellate challenge is characterized as an argument that the plea was not knowing or intelligent.  (*Id.* at p. 188; *Espinoza*, *supra*, 22 Cal.App.5th at p. 802; see *People v. Panizzon* (1996) 13 Cal.4th 68, 76 (*Panizzon*).)  A probable cause certificate is needed to challenge a plea agreement (including an appellate waiver provision) on the basis that it was not knowing and intelligent if the challenge falls within the scope of the agreement's provisions.  (*Becerra*, at p. 188; *Espinoza*, at pp. 802–803; see *Panizzon*, at pp. 76–79.)  On the other hand, a probable cause certificate is not necessary to challenge a court ruling that is outside the scope of a plea agreement term.

In *Espinoza,* the defendant's plea agreement included her waiver of the " 'right to appeal the judgment and rulings of the court.' "  (*Espinoza*, *supra*, 22 Cal.App.5th at pp. 797, 801.)  In a criminal case, judgment is rendered when the trial court orally pronounces sentence.  (See *Becerra*, *supra*, 32 Cal.App.5th at p. 189.)  In challenging the probation condition imposed at sentencing, the *Espinoza* defendant did not dispute that the challenge fell within the scope of her appellate waiver in the plea agreement.  (*Espinoza*, at p. 801.)  But she argued her "waiver was not knowing and intelligent" and thus she was not required to obtain a probable cause certificate.  (*Ibid.*)  In support of this contention, she relied on " 'post-plea events' " (the imposition of the probation conditions).  (*Id.* at p. 802.)

2

In my view, the *Espinoza* court correctly rejected this argument because the defendant conceded her waiver of the right to appeal *the judgment and the court's rulings* encompassed a challenge to the later-imposed probation conditions. The fact that the probation conditions were decided and imposed after the plea does not change this conclusion. As stated by our high court with respect to the need for a probable cause certificate, "[t]he mere fact that [the challenged ruling] happened a month after the plea . . . is not determinative [and the fact] that the events supposedly giving rise to [defendant's constitutional challenge] occurred afterwards likewise is of no consequence. Rather, 'the crucial issue is *what* the defendant is challenging.' " (See *Panizzon*, *supra*, 13 Cal.4th at p. 78.)

In *Panizzon,* the defendant was challenging the constitutionality of his agreed-upon sentence based on events occurring after the sentence was imposed. (*Panizzon*, *supra*, 13 Cal.4th at pp. 74, 77–78.) In *Espinoza,* the defendant was challenging the validity of her agreement to waive her right to appeal, which she conceded included "herright to appeal the imposition of probation terms." (*Espinoza*, *supra*, 22 Cal.App.5th at p. 801.) In both situations, the court held a probable cause certificate was required because the challenge sought to attack matters within the scope of the plea agreement. (*Panizzon*, at pp. 74–79, 89; *Espinoza*, at pp. 798–803.)

These holdings do not bar a defendant from claiming on appeal that a waiver of the right to appeal was not knowing or intelligent, and, if he or she prevails on this argument, from challenging the reasonableness of the later-imposed probation conditions. But they do bar a defendant from making these arguments when challenging a matter

3

within the scope of the plea agreement *without first obtaining a certificate of probable cause*.

This case is different from *Espinoza* because Patton's appeal waiver was narrower. Patton agreed to waive his right to appeal (1) the denial of his Penal Code section 1538.5 motion; (2) strike priors; and (3) "*any sentence stipulated herein*." (Italics added.) As the majority observes, in waiving his right to appeal "any sentence stipulated herein," the scope of Patton's plea agreement was limited to those terms included in the agreement itself. Unlike *Espinoza,* in which the defendant waived her right to appeal "the judgment" and conceded her probation condition challenge fell within the scope of this appellate waiver, Patton's probation condition challenge is outside his appellate waiver. Thus, Patton's appeal did not attack the plea or affect its validity, and no certificate of probable cause was required.

HALLER, J.

4